May it please the Court, Your Honors. My name is Wayne McMillan. I represent Ye Min Oo. Mr. Oo is a native and citizen of the brutal and repressive military dictatorship of the country of Myanmar, formerly known as Burma. He testified that he had been twice arrested, one time after a 1988 nationwide demonstration where thousands of people were both killed and others arrested. A black mark on Burma's history. He was held for one night and tortured. In 1993 he was again arrested along with his father and a number of their friends, all members of the National League for Democracy, the NLD. He again was held over one night, interrogated and beaten. One would think that based upon contra-condition reports and credible testimony of two arrests, in light of those reports, that that would be a good asylum claim. Counsel, let me ask you a question that I've asked some of your predecessors. It appears to me that asylum is fine, but as to withholding and CAT relief, those issues were not raised to the BIA period. Ergo, I take it that we do not have jurisdiction to consider those two sets of issues. We can consider asylum, obviously. I'm asking the Court to only consider asylum. I think the asylum case is well taken. You don't need to get to the issue of CAT or withholding, in my opinion. Okay. But your brief asks that we reverse on or that we send it back on those two issues. I take it we don't really have jurisdiction over those, right? Well, we ask for everything, and we take what we can get. Thank you. No, I'm arguing that it's a valid asylum claim and asylum should be granted. Instead of granting the case, of course, the judge denied it based on credibility. And the issue presented is, is there substantial evidence to support the judge's credibility finding? Two things stand out in me in reading the judge's decision. Number one, he made absolutely not one single reference to country conditions in Burma. In fact, the odd thing is that the State Department country condition reports were never introduced into evidence by either side. I have taken the liberty of pulling the reports for 2001, issued in 2002, just before the hearing. And it reports, as it does practically every year in State Department reports dealing with Burma, that Burma is ruled by a highly authoritarian military regime. The government's extremely poor human rights record and longstanding severe repression of its citizens continued during the year. Citizens continue to be subject at any time without appeal to the arbitrary and sometimes brutal dictates of the military. They do not have the right to change their government. Credible reports of extrajudicial killings and rape. Arbitrary arrest and detention for expressing of dissenting political views continued to be a common practice. Counsel, assuming it's not a nice country, let's just take the argument. A couple of things concerning me. This was a case where he was found not to be credible. Yes. Okay. And the IJ gave a number of reasons why the IJ didn't think he was credible. And we've held a number of times. It just takes one reason. One of them is good enough and goes to the heart of his claim, at least. That does it. As I'm looking at the brief on appeal to us, I don't see any discussion of the IJ's determination against credibility on the basis that this guy was traveling all over the world and had a bunch of chances to stop off in the U.S. or Mexico and didn't take advantage of them. And the thought that the demonstration that he was picked up for occurs, say, day one. And he's picked up and he's abused, let's say. And five years later, they pick him up again, allegedly based on the same demonstration, which he was apparently a very minor part. But they pick him up again based on that, apparently, and question about what happened at that demonstration and where did the other guys go? I don't see that issue discussed in the brief before us, nor do I see it discussed in the brief before the PIA, by the way. My question is, we've got at least those two couple of things that seem to be IJ props, according to the IJ. How do we deal with that? In reverse order, Your Honor, in the second arrest, you seem to be reading from the IJ's opinion more than from the record. The IJ made his decision that you claim they arrested you because of this prior participation five years ago, and they ask him questions about people running off into the wilderness five years ago. That absolutely was not the testimony. In the respondent's statement, and that is at page 186, he stated that he and his father were NLD members, that the government had arrested a number of NLD members that day. They came to the house of his father and he, and searched and arrested both of them. In his testimony, from pages 93 to 101, he testified in depth about how he was questioned about NLD membership, where the NLD gets its funding, you shouldn't belong to the NLD, if we let you go, you should not participate with the NLD anymore. At only one small part did he claim that they asked him about people who escaped in the wilderness. Sure, but my point, my question to you is, I understand what the record tells us about that. But the IJ said, I deem that to be one of the grounds of lack of credibility, and I don't see that the BIA is asked to overturn the IJ on the basis that that was an improper ground. It's not even put to the BIA. I don't really see the brief on appeal, actually, here. So my question is, if that, if I assume at the moment that's a valid ground because nobody's attacking it, why won't that support the decision? Your Honor, the appeal to the board challenged the judge's credibility finding. I think it is the obligation of the board to read the entire record and reevaluate. No, I think not. I think the, I think when you challenge something in front of the board, you've got to say like you would say to us, the IJ fouled up in his finding for reasons 1, 2, 3, 4, 5, and 6. The IJ gave six reasons, and the board was told he fouled up on bases 1, 2, 3, and 4. I don't think the board has to go beyond and look for more. I don't think there's anything in our law that says that. I believe that the board does have an obligation to look at the record, Your Honor, and evaluate the judge's credibility finding. Okay. As to the, and the judge's finding, I suppose you would call it that, now, there is not one law that I'm aware of, immigration law, regulations that require a seaman who is legally aboard a ship working, making money, but who is from a country that has persecuted him to jump off that ship at the first available opportunity, enter a country illegal as a ship jumper, and apply for asylum. Frankly, I think he would be a fool to jump ship and apply for asylum in China, Singapore, Malaysia. None of those countries have any kind of a record whatsoever. What I'm talking about is, I think the IJ referred to his stops in Mexico and the United States. And again, I would say the same thing. What obligation is placed on him by law to immediately file for asylum as soon as his ship stops him? I don't think it's any obligation. The question isn't an obligation implied by law. The question is a credibility question. In other words, if the authorities in Spain are trying to persecute and kill me and beat me and put me in prison, and I get out today to go to the United States, probably, if I'm really that scared, I should stay. Instead, I go back to Spain. And then I go back to the United States. And then I go back to Spain again. And then I go back to the United States again. Finally, I decide, oh, I guess I'll stay this time. I'm not saying that I would personally say, oh, that means you're a phony. I'm just saying, why can't a trier of facts so decide? Well, you're misinterpreting the facts. He only went back to his country one time after a trip around Asia where his choices of applying for asylum are those aforementioned countries. He went back because, and he testified, number one, his mother was sick. Number two, he was hoping after two years at sea, things would be better in Burma. When he got there, he testified, things were not better. Instead, he got these letters from the government organization. His next trip out of the country was to the United States where he caught a ship and did the cruise back and forth to Mexico about twice over a two-week period. And on a second cruise, he jumped ship in the United States and applied for political asylum. Those are the facts, not the facts that he flew all over the world and had chances to apply at every port. Thank you, counsel. You're welcome. A letter from the government. May it please the Court. Kristen Edison for the Attorney General. In order to succeed on his petition for review, Mr. Ou must demonstrate that the record compels reversal of the immigration judge's decision denying him asylum on adverse credibility grounds. However, here, the record clearly does not compel reversal of the immigration judge's decision. First, as Your Honor pointed out, with regard to the discussion on the State Department report, I'd like to emphasize that although it appears on the record that the State Department report was submitted but is not contained in the record, the fact that the State Department report is not there is not a harmless error because, as His Honor pointed out, the immigration judge's decision was based on the fact that petitioner's testimony, the finding that petitioner's testimony was not credible. I think we can all agree that Burma is a pretty tough place and that there are many legitimate claims coming out of Burma. It seems to me that the question here is the adverse credibility finding. Is that what you're saying? Yes, Your Honor. Yes. I mean, I don't think we need to argue about Burma, whether it's a safe country or not. No, Your Honor. Okay. But here, Mr. Ou's asylum claim is premised on one incident in 1988 and then another incident five years later in 1993 and petitioner's receipt of two letters seven years later that supposedly required him to join an organization supporting Burma's military government. Here, it's Respondent's position that the immigration judge articulated several specific grounds for the adverse credibility finding, including, as Your Honor pointed out, petitioner's testimony that he had numerous opportunities to seek asylum before he did so in the United States. And specifically with regard to his opportunities in 2001, the petitioner testified that he was four times in the United States and twice in Mexico. That's just in 2001 before he decided to file for asylum. In addition, the immigration judge based his adverse credibility finding on petitioner's failure to produce letters from the USDO, allegedly, that I think it's fair to say are critical to his claim. In addition, the immigration judge cited several, several other inconsistencies in petitioner's testimony between his asylum statement and his hearing testimony. Why do you think that the fact that you may have had opportunities to seek asylum reflects on his credibility? I mean, the question on credibility is, is the petitioner testifying truthfully? I'm not sure I see the correlation. He may say, well, I should have come, he could have come earlier, speculating, I suppose, that he may or may not have been sincere, I suppose. But that doesn't reflect on the truthfulness of his testimony, does it? Well, Your Honor, it certainly tends to suggest, as the immigration judge noted, that petitioner's asylum claim wasn't that urgent, and that overall. Why does that reflect on credibility, though? I mean, one may or may not have a variety of reasons for saying, you know, applying or seeking asylum at various points. But the key question is to say, I don't think this person is telling the truth. And it just seemed to me that the recitation, the fact that he had opportunities, may or may not have, it didn't seem to me to go to the fact that he was, he testified about that. I understand. The IJ believed him about that. I understand your point, Your Honor, but I think that it goes to the overall credibility of petitioner's claim. And the immigration judge, I believe, highlighted petitioner's testimony that, and this appears at pages 118 and 119 of the record, that petitioner decided to apply for asylum only when he heard that all Burmese crewmen were going to be returned to Burma. So, Your Honor, I believe it reflects on the overall credibility of petitioner's. Well, sure, he did want to go back. And I'm not sure that that reflects on the fact that he was trying to escape from Burma. I mean, obviously he was trying to escape from Burma. I understand, Your Honor. But that issue aside, there are several other bases that the immigration judge articulated. Well, let's talk about them then. Go ahead. Well, aside from the issue regarding the letters that petitioner claimed prompted him to leave Burma in 2001. I'm not sure I understand why the IJ thought it was not credible that he couldn't get the letters. They're back in Burma. How was he supposed to get them out? I believe, Your Honor, petitioner had another friend or someone, he said, whom he trusted hand-carry other documents that he submitted into the record. And so it appears that there's no reason why he couldn't have had these letters, which are critical to his claim, hand-carried at that time as well. And the immigration judge included that aspect in his decision. In addition, would Your Honor like me to discuss the other? It's your argument. If that's a corroborating evidence question, the documents, then I take it we don't have jurisdiction to review corroborating evidence issues. Is that right? Your Honor, my 28J letter, I pointed out a provision under the Real ID Act. Right. That just further clarifies Congress's intent that the immigration judge's finding with regard to corroborating evidence shouldn't be reversed unless a reasonable fact finder would be compelled to conclude that that evidence was unavailable. Right. Okay. Does that respond to that? That's the standard, right, under the Real ID Act. It's not that we don't have any jurisdiction at all. It's just that we can't consider that unless we would conclude that the fact finder would be compelled to find that corroborating evidence was unavailable. That's correct, Your Honor. I believe that the other bases of the immigration judge's articulated sufficiently in my brief. Absent any questions from the Court, I'll conclude. Any questions? And simply request that the Court deny the petition for review. Thank you. We'll give you a minute. We'll give you one minute since she was kind enough to finish succinctly. But be very succinct because we have so many other cases. This is not a Real ID case. This took place two or three years before Real ID. Second, the testimony was that the friend refused to bring the letters but did agree to bring a birth certificate and a security card of some sort. Relatively benign documents different from a threatening letter. And the third thing is in the first arrest, the judge complained that you never told us about all of this torture and there's no explanation for that. The explanation is that he was never asked to explain about the discrepancy, alleged discrepancy, between the torture he suffered in the first arrest and the statement that he made. But more important, the judge said, your statement is you were interrogated all night, which was like torture. And that is not his statement. His statement in his poorly written English declaration is, I was interrogated all night with torture. Thank you, Counsel. Thank you. The case is here to be submitted.
judges: Farris, Fernandez, Thomas